UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TRUONG JASON DINH,
    *Plaintiff*,

v.

ALEX BOISVERT,
    *Defendant.*

No. 3:22cv1119 (OAW)

**INITIAL REVIEW ORDER**

At the time this action was filed, the plaintiff, Truong Jason Dinh, was an unsentenced inmate[1] housed at Garner Correctional Institution ("Garner") in the custody of the Department of Correction ("DOC"). Compl., ECF No. 1. Plaintiff proceeds *pro se* in this action for damages under 42 U.S.C. § 1983 against Garner Correctional Officer Alex Boisvert. For the following reasons, the court will dismiss the complaint for failure to state any plausible claims under 42 U.S.C. § 1983.

**I.   FACTUAL BACKGROUND[2]**

Plaintiff was incarcerated at Garner from February 2019 to November 2019. Compl., ECF No. 1 at ¶ 1. At that time, Defendant Boisvert was a new correctional

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the Department of Correction website showed that Plaintiff was an unsentenced inmate housed at Garner Correctional Institution with a latest admission date of January 12, 2022. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=380140 (last visited Nov. 2, 2022). Information resulting from a search of pending criminal cases on the Connecticut judicial website using Plaintiff's last name and first initial showed that Plaintiff had several criminal cases awaiting disposition for, inter alia, violation of a protective order, violation of a standing criminal protective order (which extends beyond resolution of a domestic violence case), and violation of probation (where underlying convictions included threatening, stalking, risk of injury to a child). *See* https://www.jud2.ct.gov/crdockets/parm1.aspx (last visited November 2, 2022).
[2] All factual allegations are drawn from the complaint and considered to be true.

officer. *Id.* at ¶ 2.  At some time during this period, Plaintiff was subjected to an annual shakedown.  *Id.* at ¶ 3.  Defendant Boisvert entered Plaintiff's cell, searched his property, and "got hold" of his personal information and pictures of Plaintiff with his daughter.  *Id.* at ¶ 4.

During the search, Plaintiff stood on the housing unit's bottom tier across from his cell and watched the cell search.  *Id.* at ¶ 16.  After exiting Plaintiff's cell, Defendant Boisvert stopped and looked at Plaintiff, who was staring at him.  *Id.*  Plaintiff yelled, "Am I good?"  Boisvert responded, "Yeah you're good."  *Id.*  Defendant Boisvert then walked away.  *Id.*

Plaintiff alleges that Defendant Boisvert realized he resided in the same town as Plaintiff and pursued a "secret relationship" with Indiana Barboza, Plaintiff's girlfriend and the mother of his daughter.  *Id.* at ¶ 5.

In November 2020, Defendant Boisvert ruined Plaintiff's relationship with both Barboza and his daughter.  *Id.* at ¶ 6.  Thereafter, Defendant Boisvert harassed Plaintiff.  *Id.* at ¶ 8.  In March 2021, four months after Defendant Boisvert and Barboza met, Defendant Boisvert "manipulated" Barboza into taking out a protective order against Plaintiff.  *Id.* at ¶ 9.  He has also "manipulated" Barboza to turn against Plaintiff.  *Id.*

Defendant Boisvert's former fiancée notified Plaintiff that Barboza had left Plaintiff for Defendant Boisvert, who still worked as a correctional officer at Garner.  *Id.*  Plaintiff then "thought back" to the shakedown conducted by Defendant Boisvert in 2019, which was the only time that Defendant Boisvert could have obtained his information.  *Id.* at ¶ 15.

In November and December 2021, Defendant Boisvert and Barboza used the protective order to file false reports with the Danbury Police Department and the Connecticut Superior Court.  *Id.* at ¶ 10.  As a result, the Plaintiff was falsely arrested four separate times and has been "wrongfully incarcerated" since January 11, 2022.  *Id.* at ¶ 11.

Defendant Boisvert continues to harass Plaintiff.  *Id.* at ¶ 18.   He sends Plaintiff pictures showing Defendant Boisvert hugging Plaintiff's daughter.  *Id.* at ¶ 19.   He also sends messages including: "Your daughter calls me daddy," and "You're going to prison while I'm raising my 5 year old daughter in Texas."  *Id.* at ¶ 20.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and sua sponte "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," see Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57.  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by pro se plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v.*

*Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

## III.   DISCUSSION

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir.1997). In order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Although Plaintiff has not asserted any specific violations of his constitutional rights, the court considers whether Plaintiff has alleged any plausible claims under 42 U.S.C. § 1983.

### A.   Fourth Amendment:  2019 Cell Search

The court first considers whether Plaintiff has stated any plausible Fourth Amendment claim based on Defendant's Boisvert's alleged search of his cell in 2019.

5

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment protects against unreasonable seizures and governs a claim arising from excessive force used in connection with an arrest.  *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002) ("The Fourth Amendment is not the proper source of [the plaintiff]'s constitutional right because [the defendant]'s objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity.").

Generally, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  *Hudson v. Palmer,* 468 U.S. 517, 526 (1984).  However, "inmates do retain a limited right to bodily privacy."  *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992).  To determine whether an isolated search infringed on an inmate's Fourth Amendment right of bodily privacy and was thus unreasonable, a court must "balance[e] the need for the particular search against the invasion of personal rights that the search entails."  *Harris v. Miller,* 818 F.3d 49, 58 (2d Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  To that end, the court must consider four factors: (1) the scope of the intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which search was conducted.  *Id*.

Here, Plaintiff alleges that Defendant Boisvert searched his cell during an "annual shakedown," which indicates that the search was conducted as part of a legitimate effort to maintain institutional safety and security.  Plaintiff alleges he watched the cell search from another tier in the housing unit.  In sum, no allegations suggest that Defendant

Boisvert's search infringed upon his bodily privacy or that the search was conducted in an unreasonable manner in any way.

Moreover, Plaintiff's contention that the relationship between Defendant Boisvert and Barboza resulted from the cell search appears (as presently alleged) to be based on Plaintiff's own conjecture,[3] which is insufficient to state a constitutional claim. *See Allah v. Murphy*, No. 914CV0438GTSTWD, 2016 WL 4401069, at *6 (N.D.N.Y. May 16, 2016*), report and recommendation adopted*, No. 914CV438GTSTWD, 2016 WL 4386013 (N.D.N.Y. Aug. 17, 2016), *aff'd*, 699 F. App'x 41 (2d Cir. 2017) (stating that plaintiff's claim that a "'build up of mail stored in a large manilla envelope' suggest[ed] that his mail was being tampered with 'over some time'" was conjecture and speculation and insufficient to establish a constitutional violation).

Accordingly, Plaintiff has not alleged facts to state a plausible Fourth Amendment claim based on Defendant Boisvert's cell search in 2019.

**B.      Fourth Amendment:  False Arrest and Wrongful Incarceration**

Plaintiff asserts that Defendant Boisvert and Barboza made false reports to the Danbury Police Department on four occasions in connection with a standing protective order.  He claims that their reports caused him to be falsely arrested several times and "wrongfully" incarcerated since January 11, 2022.  Compl., ECF No. 1 at ¶ 10.  The court construes Plaintiff's allegations most broadly to assert Fourth Amendment violations based on unlawful arrests, false imprisonment, and malicious prosecution. *See, e.g., Sentementes v. Town of Bethel*, No. 3:20CV580 (MPS), 2020 WL 5994950,

---

[3] Plaintiff's allegations indicate that the relationship between Defendant Boisvert and Barboza commenced sometime in November 2020, at least a year after the search was conducted.  *See* Compl., ECF No. 1 at ¶¶ 6, 9 (alleging that in March 2021, four months after Defendant Boisvert and Barboza met, Barboza sought a obtained a protective order against Plaintiff).

7

at *6 (D. Conn. Oct. 9, 2020) (analyzing claims of false arrest, malicious prosecution, and false imprisonment under the Fourth Amendment).

Plaintiff's allegations indicate that sometime after 2019, Defendant Boisvert was no longer working as a Connecticut DOC correctional officer as he was allegedly raising either Plaintiff's or his own daughter in Texas. Compl., ECF No. 1 at ¶ 20. Thus, it is not clear from the complaint that Defendant Boisvert would be considered a state actor in 2021. Even if he were a Connecticut DOC employee at the relevant time, though, Plaintiff has not alleged conduct that could qualify as being performed under "the color of law." *See* 42 U.S.C. § 1983.

"To act under color of state law or authority for purposes of section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49, (1988)). The focus of a color of law inquiry is "whether there was an abuse or misuse of power conferred upon [an officer] by state authority." *Pitchell v. Callan*, 13 F.3d 545, 549 (2d. Cir. 1994); *see United States v. Giordano*, 442 F.3d 30, 47 (2d Cir. 2006) (stating that the defendant acted under color of law where he used his apparent authority as mayor to ensure that victims did not resist or report the ongoing abuse.); *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir. 2003) (holding off-duty corrections officer acted under color of law when he identified himself as a police officer and drew his gun on a motorist with whom he had an argument over the use of a roadside payphone); *Rivera v. La Porte,* 896 F.2d 691, 695–96 (2d Cir.1990) (holding an off-duty corrections officer acted under color of law when he arrested and assaulted

a driver following a private argument during traffic jam); *see also United States v. Tarpley,* 945 F.2d 806, 808–09 (5th Cir.1991) (holding that police officer acted under color of law when he assaulted his wife's lover and threatened to kill his victim if he reported the incident, telling him "I'll kill you, I am a cop.").

It is well established, however, that an officer's "personal pursuits" do not give rise to liability under Section 1983.  But "there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law."  *Pitchell*, 13 F.3d at 548.  In *Pitchell*, the Second Circuit held that an off-duty, drunken police officer who pointed a gun at another person was not acting under color of law because he "was not acting in accordance with a police regulation . . ., nor was he invoking the authority of the police department . . . ."  *Id.* at 548.  Where an officer's conduct is not "committed in the performance of any actual or pretended duty," the officer did act under the color of law.  *See id.* (quoting *Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir.1982)) (internal quotation marks omitted).

Plaintiff alleges that Defendant Boisvert took steps to have Barboza obtain a protective order against him and later took action by making false reports to enforce the order against Plaintiff.  These allegations describe Defendant Boisvert's "personal pursuits" in connection with his personal relationship with Barboza.  Plaintiff does not allege facts suggesting that Defendant Boisvert was acting in accordance with any DOC regulation, under DOC authority, or in the performance of any actual or pretended DOC duty.  *See Vasquez v. Garcia*, 432 F. Supp. 3d 92, 97–98 (D. Conn. 2019) (concluding police officer who sent graphic and sexual text message to the plaintiff was not acting under color of law where he had not "invoked the name of the Bridgeport Police

Department or his authority as a Bridgeport police officer in sending these text messages" and he did not have "authorization from anyone in the Bridgeport Police Department or the police regulations of the Bridgeport Police Department to send [the plaintiff] these graphic and sexual text messages.").

Plaintiff also cannot premise a Section 1983 claim on the fact that Defendant Boisvert or Barboza spoke to or provided a written statement to the Danbury Police Department in connection with the protective order against Plaintiff. *See McDonald v. Stamford Police Dep't*, No. 3:21-CV-00723 (KAD), 2022 WL 1471249, at *4 (D. Conn. May 10, 2022) (finding no state action by defendants who sought orders of protection and/or notified police when they believed that the plaintiff was in violation of those orders). Additionally, Plaintiff has not alleged facts showing that Boisvert directly participated in his arrest, prosecution, or incarceration.

Accordingly, even if Defendant Boisvert were employed as a state official at the time relevant to Plaintiff's complaint, and even if the court were to find that Plaintiff was wrongfully arrested and falsely imprisoned,[4] Plaintiff has not alleged a plausible Section 1983 claim because there is no indication that Defendant Boisvert acted under color of law. Thus, any Fourth Amendment violation against Defendant Boisvert for his involvement with obtaining and enforcing the protective order against Plaintiff must be dismissed as not plausible.

---

[4] For clarity, the court is not finding that Plaintiff has shown he was wrongfully arrested or falsely imprisoned. Given the court's conclusions, a determination as to the sufficiency of those allegations need not be made. Additionally, the court notes that Mr. Dinh was sentenced to two years in jail for a December 19, 2021 Violation of a Protective Order, two years in jail for a December 18, 2021 Violation of a Standing Criminal Protective Order (for which he was arrested on January 11, 2022), and ten years, suspended after thirty months in jail, followed by four years of probation for violating a felony probation. *See* https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx (last visited January 6, 2023).

### C. State Law Claims

It is not clear whether Plaintiff asserts any state law claims in this action. To the extent that he does, the court declines to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the court may decline to exercise supplemental jurisdiction over a state law claim if the court has dismissed all claims). Any state law claims are dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the court **DISMISSES** the complaint without prejudice. The Clerk of Court is instructed, respectfully, to please close this action.

**IT IS SO ORDERED** at Hartford, Connecticut, this 6th day of January, 2023.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE